IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TERRY A. RIGGLEMAN,      )
     Plaintiff,         )     Case No. 7:22-cv-00100
                       )
v.                    )
                       )     By: Michael F. Urbanski
R.N. L. JOLLY, et al.,      )     Chief United States District Judge
     Defendants.      )

## MEMORANDUM OPINION

Terry A. Riggleman, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against several individuals employed by or associated with the Virginia Department of Corrections ("VDOC"). Riggleman claims that the defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The case is presently before the court on a motion for summary judgment filed by Sergeant Ingram, Sergeant Guy, and Captain Brown (collectively, the "VDOC defendants"). The VDOC defendants seek summary judgment on the ground that Riggleman failed to exhaust his administrative remedies. For the reasons set forth below, the motion for summary judgment, ECF No. 39, is **DENIED**.

### Factual Background

The following facts are either undisputed or presented in the light most favorable to Riggleman, the nonmoving party on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### I.    Riggleman's Medical Issues

On March 7, 2020, Riggleman began experiencing abdominal pain while incarcerated at Augusta Correctional Center. Verified Compl. ("Compl."), ECF No. 1, at 25. The pain worsened

throughout the evening, eventually causing nausea and vomiting. Id. at 26. At approximately 9:00 p.m., Riggleman's cellmate informed Sergeant Ingram and another officer that Riggleman had been sick for over an hour and that he needed immediate medical attention. Id. The officers instructed Riggleman's cellmate to fill out an emergency grievance on Riggleman's behalf. Id.

At 9:08 p.m., Riggleman's cellmate completed an emergency grievance requesting medical attention. See Aff. of S. Conner ("Conner Aff.") Encl. B, ECF No. 40-1 at 21. The emergency grievance indicated that Riggleman was experiencing severe stomach pain and vomiting, and that he was "getting ready to pass out [because of] the pain." Id. In a written response provided at 10:00 p.m., Nurse L. Jolly noted that the grievance did not meet the definition for an emergency and that Riggleman should take prescribed medication. Id.

When Sergeant Ingram and the other officer returned to Riggleman's cell with Nurse Jolly's response, the cell door was open and Riggleman was lying "face down on the floor by the toilet in severe pain experiencing an obvious emergency medical crisis." Compl. at 28. Sergeant Ingram reported having heard Jolly say that Riggleman was "going to just have to deal with it for tonight," because she was the only nurse available. Id. (internal quotation marks omitted). Although Ingram indicated that he did not agree with Jolly refusing to help Riggleman, he and other officer nonetheless "left the vicinity" as Riggleman remained "on the floor face down expressing pain." Id.

Over the next hour, Riggleman continued to alternate between vomiting in the toilet and lying "face down on the floor begging for help." Id. at 29. At approximately 11:00 p.m., Sergeant Guy and another officer went to the cell and informed Riggleman that they were going to speak to the shift commander, Captain Brown, in an effort to obtain medical assistance for Riggleman. Id. at 30. At that time, Riggleman "was still lying face down on the floor of his cell . . . in tortuous

pain." Id. After a few minutes, Sergeant Guy and the other officer left Riggleman unattended, "allowing nature to continue to take its course." Id.

At 11:15 p.m., Riggleman's cellmate submitted another emergency grievance on behalf of Riggleman. Conner Aff. Encl. C., ECF No. 40-1 at 22. The emergency grievance reported that Riggleman was still experiencing severe abdominal pain and vomiting; that he was "on Epclusa from VCU"; that someone needed to "contact Reena Cherium at VCU Hepatology immediately"; and that his symptoms had "been going on for 4 [hours]." Id.

At approximately 12:00 a.m. on March 8, 2020, Sergeant Guy and Sergeant Ingram arrived at Riggleman's cell with a wheelchair and transported him to the medical unit, where he saw Nurse Jolly. Id. After Riggleman explained that he had been experiencing severe pain and nausea for at least four hours, Nurse Jolly gave him Tylenol for pain and instructed him to vomit in a pan so that she could "see what color it was." Id. at 31 (internal quotation marks omitted). Approximately twenty minutes later, Riggleman began to vomit uncontrollably, prompting him to beg for help. Id. at 32. At that point, Jolly informed Riggleman that she would call the doctor on call to see if he wanted to send Riggleman for outside treatment. Id. at 33.

Riggleman remained in the medical department for approximately four hours before he was transported to a hospital in Fishersville, Virginia. Id. 36. After undergoing several procedures, he was diagnosed as having "an infected 3 mm distal kidney stone" for which he underwent surgery. Id. at 37. He remained in the hospital until the afternoon of March 9, 2020. Id. at 38.

## II.    Inmate Grievance Procedure

VDOC Operating Procedure ("OP") 866.1, titled "Offender Grievance Procedure," is the mechanism used to resolve most complaints and grievances from inmates incarcerated in VDOC facilities, including complaints related to conditions of care. See OP 866.1, eff. July 1, 2016,

Conner Aff. Encl. A, ECF No. 40-1. Pursuant to OP 866.1, inmates must first make a good faith effort to resolve their issue informally through the procedures available at the institution. OP 866.1(V)(A). Generally, this may be accomplished by submitting an informal complaint to the grievance department, which is then forwarded to the appropriate staff for investigation and a response. Id. The response should be provided within 15 calendar days. OP 866.1(V)(B).

If an inmate does not receive a timely response to an informal complaint, or if the inmate is dissatisfied with the response, the inmate may submit a regular grievance. OP 866.1(V)(A)(3); see also OP 866.1(VI) (describing the regular grievance procedure). A regular grievance generally must be submitted within 30 calendar days from the date of the incident or the discovery of the incident. OP 866.1(VI)(A). Inmates must use the regular grievance form to submit a grievance, and they must describe their complaint in the space provided on the form. Id.

"There are three possible levels of review for regular grievances." OP 866.1(VI)(C). The Warden or "Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. OP 866.1(VI)(C)&(D). A dissatisfied inmate may appeal to Level II, where the appeal is reviewed by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. Id. Level II responses must be provided within 20 calendar days. Id. For most issues, Level II is the final level of review. OP 866.1 explains that an inmate satisfies the requirements for exhausting administrative remedies when a regular grievance has been appealed through the highest eligible level of review without a satisfactory resolution of the issue. OP 866.1(IV)(O).

### III.    Relevant Grievance Records

On March 11, 2020, two days after he returned from the hospital, Riggleman filed an informal complaint in which he complained about the delay in providing treatment for his

complaints of severe pain and vomiting. Conner Aff. Encl. D., ECF No. 40-1 at 23. At the top

of the informal complaint, Riggleman listed the "Individuals Involved" as Nurse Jolly[1] and

Correctional Officers Kendrick, Ingram, Fitzgerald, Guy, and Anderson. Id. He then provided

the following explanation of the nature of his complaint:

> As I lay on the floor for 4 hrs. in so much pain I was vomiting &
> despite 2 [emergency grievances] and repeated attempts to get her
> to act by several members of security staff, RN Jolly refused to come
> to me and give me the emerg[ency] medical attention I needed.
> Security eventually took it upon themselves to take me to medical in
> a wheelchair without medical assistance to force Jolly to help me.
> Jolly's actions constitute malpractice, deliberate indifference, and
> violate her Hippocratic oath. My condition resulted in an
> [emergency] surgical procedure.

Id.

After receiving a response from Nurse D. Dameron on March 19, 2020, Riggleman filed

a regular grievance containing the same allegations. Conner Aff. Encl. D, ECF No. 40-1 at 26.

He identified Nurse Jolly and the correctional officers as the "Individuals Involved" in the

incident at issue. Id. He asserted that the fact that he was sent to the hospital after experiencing

pain for over seven hours did not excuse Jolly's actions. Id. He further asserted that Jolly's

"nursing license needs to be suspended until she makes a conscious decision to uphold her oath

to help people whether they are inmates or not." Id.

The Warden of Augusta Correctional Center provided a Level I response on June 1, 2020,

in which he determined that Riggleman's grievance was "founded." Conner Aff. Encl. D, ECF

No. 40-1 at 24. The Warden explained that an investigation had revealed that "medical

emergencies are to be called over the radio and not [communicated through] a phone call to the

---

[1] Riggleman referred to Jolly as "RN Jollyn" in his administrative complaints. Quotations from those
filings reflect the correct spelling of Jolly's last name.

Medical Department" and that there had been "communication between medical and security regarding how to notify medical of a potential emergency." Id. The Warden also noted that the matter had been "addressed with medical and security to ensure medical issues are properly communicated between the departments." Id.

Riggleman appealed the Level I decision to the Health Services Director. Conner Aff. Encl. D, ECF No. 40-1 at 27. The Health Services Director concurred with the Level I response and determined that Riggleman's grievance was founded. Id. The response indicated that the medical department "will be reminded to develop a plan to ensure procedures are followed in accordance with policy." Id. The Level II response was the "last level of appeal" for the complaint, and Riggleman was advised that "[a]ll administrative remedies have been exhausted regarding this issue." Id.

## Procedural History

On February 22, 2022, Riggleman filed this action under 42 U.S.C. § 1983 against Nurse Jolly, Sergeant Ingram, Sergeant Guy, Captain Brown, and Correctional Officers Kendrick, Fitzgerald, and Anderson. Riggleman claims that the defendants violated his rights under the Eighth Amendment by failing to adequately respond to his serious medical needs.

Ingram, Guy, and Brown, each of whom is represented by the Office of the Attorney General of Virginia ("OAG"), have filed a motion for summary judgment.[2] The VDOC defendants argue that the claims against them should be dismissed on the basis that Riggleman

---

[2] The OAG declined to accept service of process for Jolly, Fitzgerald, Anderson, and Kendrick, since they are not (or no longer) VDOC employees. As of this date, the Marshals Service has been unsuccessful in its attempts to serve these defendants.

failed to exhaust his administrative remedies. The motion for summary judgment has been fully briefed, and it is ripe for disposition.

## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, "[t]he court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). The court "may not weigh the evidence or make credibility determinations." Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019) (internal quotation marks and citations omitted).

## Discussion

The VDOC defendants have moved for summary judgment on the ground that Riggleman failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). Although these defendants acknowledge that Riggleman filed grievances complaining about the delay in responding to his complaints of severe pain and vomiting, they argue that the grievances primarily focused on Nurse Jolly's actions and omissions, and that Riggleman did not exhaust his claims against them. For the following reasons, the court disagrees and concludes that Riggleman satisfied the exhaustion requirement.

The PLRA provides that "[n]o action shall be brought" in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "proper exhaustion of administrative remedies is necessary" to satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83 (2006). In order to properly exhaust administrative remedies, an inmate "must 'complete the

administrative review process in accordance with the applicable procedural rules'—rules that are not defined by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted) (quoting Woodford, 548 U.S. at 88). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" Id.

In Jones, the Supreme Court addressed the issue of whether prison grievances must name particular defendants in order to satisfy the exhaustion provision of the PLRA. Id. at 218–219. The Court held that the PLRA itself does not impose such a requirement. Id. at 218. Although the Court acknowledged that a "name all defendants" requirement might "promote early notice to those who might later be sued," the Court noted that promoting such notice "has not been thought to be one of the leading purposes of the exhaustion requirement." Id. at 218–219. Instead, the Court has "identified the benefits of exhaustion to include allowing a prison to address complaints about a program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. at 219; see also see Woodford, 548 U.S. at 94 (explaining that requiring proper exhaustion "provides prisons with a fair opportunity to correct their own errors"). "Accordingly, to satisfy the exhaustion requirement, grievances generally need only be sufficient to 'alert[] the prison to the nature of the wrong for which redress is sought.'" Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). "Thus, once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." Id.

Having reviewed the record and applicable law, the court concludes that the VDOC defendants are not entitled to summary judgment on the basis of Riggleman's alleged failure to

exhaust administrative remedies. The record reflects that Riggleman timely filed an informal complaint and a regular grievance alleging that he experienced severe abdominal pain and vomiting on the night of March 7, 2020; that Nurse Jolly refused to respond to requests for medical attention; that he was left on the floor of his cell for several hours before "security eventually took it upon themselves to take [him] to medical in a wheelchair"; and that he ultimately had to undergo emergency surgery. Conner Aff. Encl. D, ECF No. 40-1 at 26. The record also reflects that the Warden addressed the regular grievance on the merits and that Riggleman appealed the Warden's Level I response to the Health Services Director at Level II, as required to exhaust his administrative remedies under OP 866.1. See OP 866.1(IV)(O); see also Conner Aff. Encl. D, ECF No. 40-at 27 (informing Riggleman that all administrative remedies had been exhausted).

Although the defendants correctly note that Riggleman's regular grievance largely focused on Nurse Jolly's actions and inactions, the submission also made clear that members of the security staff were subjectively aware of his need for medical attention, and it specifically identified Ingram, Guy, and other correctional officers as individuals involved in the incident at issue. Additionally, the Warden's response to the regular grievance indicates that he understood the grievance to implicate both medical and security staff. See Conner Aff. Encl. D, ECF No. 40-1 at 24 ("This matter has been addressed with medical and security to ensure medical issues are properly communicated between the departments.") (emphasis added). Finally, and perhaps most importantly, the grievance plainly alerted prison officials to "the nature of the wrong for

which redress is sought"—the delay in obtaining and providing medical treatment for Riggleman's serious medical needs.[3] Wilcox, 877 F.3d at 167 n.4.

Based on the foregoing, the court concludes that Riggleman's grievance contained sufficient information to exhaust his claims against the VDOC defendants. Since it is undisputed that Riggleman pursued the grievance through all available levels of appeal as required by OP 866.1, the VDOC defendants are not entitled to summary judgment on exhaustion grounds.

## Conclusion

For the reasons stated, the VDOC defendants' motion for summary judgment, ECF No. 39, is **DENIED**. The VDOC defendants shall have 45 days to file any motion for summary judgment addressing the merits of Riggleman's claims. An appropriate order will be entered.

Entered: September 7, 2023

Digitally signed by Michael F.
Urbanski     Chief U.S. District
Judge
Date: 2023.09.07 10:57:00 -04'00'

Michael F. Urbanski
Chief United States District Judge

---

[3] These facts distinguish Riggleman's case from a case cited by the VDOC defendants, Harper v. Gore, No. 3:15-cv-00303, 2017 WL 2569601 (E.D. Va. June 13, 2017). The plaintiff in that case became unresponsive in his cell after being given the wrong prescription medications by a prison nurse, and he claimed that correctional officers improperly delayed their response to his cellmate's request for medical attention. The district court granted the correctional officers' motion for summary judgment on the issue of exhaustion, concluding that the prison "never had the 'fair opportunity' to examine the merits of his claims" against the correctional officers. 2017 WL 2569601, at *5 (quoting Woodford, 548 U.S. at 95). Although the plaintiff submitted an informal complaint and a regular grievance before filing suit, both submissions solely "pertain[ed] to his receipt of the wrong medication" from the prison nurse. Id. Neither mentioned the alleged delay in responding to requests for medical assistance after he became unresponsive or otherwise suggested that correctional officers were aware of the plaintiff's need for medical attention. Id. at *4. Thus, unlike the instant case, the prison did not receive "notice of, and an opportunity to correct, a problem" involving medical and security staff. Wilcox, 877 F.3d at 167 n.4.